**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL WRIGHT,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil No. 3:12-CV-4715-K-BK** |
| | § | |
| **E-SYSTEMS, LLC, et al.,** | § | |
| **Defendants.** | § | |

**FINDINGS, RECOMMENDATIONS, AND CONCLUSION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Judge's *Order of Reference*, Doc. 71, this cause is before the Court on Plaintiff's *Motion for Default Judgment* with respect to damages, Doc. 70. Upon consideration of the motion, the record, and applicable law, the Court recommends that the *Motion for Default Judgment* as to damages be **GRANTED IN PART**.

**I.  BACKGROUND**

In November 2012, Plaintiff sued Defendants for patent infringement, seeking damages, attorney's fees, and an injunction against further infringement. Doc. 1. Although Defendants were properly served, they did not file any responsive pleadings or otherwise appear. After the Clerk entered a default against Defendants, Doc. 22 & Doc. 24, Plaintiff filed a *Motion for Default Judgment*, Doc. 41. The undersigned recommended that default judgment be granted as to Defendants' liability, but not damages. Doc. 44. District Judge Kinkeade accepted that recommendation. Doc. 46.

Thereafter, Plaintiff attempted to conduct discovery as related to the damages issue, eventually requesting sanctions against Defendants due to their failure to respond. Doc. 57. Upon the recommendation of the undersigned, District Judge Kinkeade (1) found Defendants in contempt; (2) directed Defendants to certify to the Court that they had answered Plaintiff's

previously served discovery requests as directed by the undersigned; and (3) ordered Defendants to pay Plaintiff's attorney's fees. Doc. 69.

When Defendants still failed to respond, Plaintiff moved for default judgment as to damages. Doc. 70. At the evidentiary hearing held on the motion, Plaintiff presented to the Court his requests for admission directed to Defendants. Doc. 70-1 at 12-27. Due to Defendants' failure to respond to Plaintiff's discovery attempts, all of the requests for admission are deemed to be admitted. FED. R. CIV. P. 36(a)(3) (providing that if a party does not respond to requests for admission within 30 days, the particular matter is deemed to have been admitted).

## II.  APPLICABLE LAW

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. FED. R. CIV. P. 55(a). Once the clerk enters the default, the party may request that the court enter a default judgment. *Id.*; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The decision to grant a default judgment is one soundly within the district court's discretion. *Lewis*, 236 F. 3d at 767. There must be a sufficient basis in the pleadings for a court to enter judgment by default. *Nishimatsu*, 515 F.2d at 1206. In defaulting, a defendant does not admit facts that are not well-pleaded nor does he admit any conclusions of law. *Id.*

In patent actions, upon a finding in the plaintiff's favor, the court must award damages that are adequate to compensate for the infringement as well as interest and costs as fixed by the court. 35 U.S.C. § 284. When damages are not determined by a jury, the court must assess them. *Id.* In either event, the court may increase the damages up to three times the amount

found or assessed.  *Id.*  The court also may grant an injunction to prevent the violation of any

right secured by patent on terms that the court deems reasonable.  35 U.S.C. § 283.  In

exceptional cases, the court also may award reasonable attorney's fees to the prevailing party.

35 U.S.C. § 285.

## III.   DISCUSSION

Plaintiff has submitted testimony and evidence that itemizes and supports the amount of

damages Plaintiff incurred due to Defendants' conduct.  Doc. 70-1 at 12-27.  Moreover, the

court has considered all affidavits and attached exhibits filed by Plaintiff and his counsel.  The

Court has previously entered a default judgment for Plaintiff on his contributory infringement

and induced infringement claims.[1]  Doc. 44 at 3-4.

### 1.   Defendant E-Systems (d/b/a Tricplate)

The evidence of record establishes that after Plaintiff learned of Defendant E-Systems'

sale of infringing products in early 2011, he contacted E-Systems by phone and spoke to a

manager named Reggie Tan ("Tan").  Doc. 41-1 at 16-17 (Wright Affidavit).  Tan told Plaintiff

that E-Systems had sold many thousands of the infringing items over the course of several years.

Doc. 41-1 at 16-17 (Wright Affidavit); Doc. 70-1 at 13-14 (E-Systems' deemed admissions).

Shortly thereafter, Plaintiff emailed Tan, advising him that E-Systems' product was infringing on

his patents, for which he provided the patent application numbers.  Doc. 41-1 at 17 (Wright

Affidavit); Doc. 41-1 at 19 (email string).  A second email and a number of phone calls were left

unanswered.  Doc. 41-1 at 17 (Wright Affidavit).

---

[1] Defendants Covertglass and PTC also were found liable for false marking, but Plaintiff has
not requested a separate award of damages as to that claim.

In June 2011, Plaintiff sent a cease and desist letter to E-Systems. Doc. 41-1 at 20-23 (Letter to John Vanhara); Doc. 70-1 at 15 (E-Systems' deemed admissions). E-Systems responded to the letter, refuting the allegations of infringement, and it continued to sell the infringing product. Doc. 41-1 at 24 (E-Systems' letter); Doc. 70-1 at 15 (deemed admission that E-Systems' actions were "willful, deliberate, and made with the full understanding that [their product] infringed Plaintiff Wright's patents.").

As established from E-Systems' deemed admissions, it sold at least 17,500 units of the infringing product since 2008. Doc. 70-1 at 14 (E-Systems' deemed admissions). E-Systems' admissions also acknowledged that its actions were solely responsible for Plaintiff's loss of $5,250,000 in sales because E-Systems flooded the market with the infringing product, thereby preventing Plaintiff from profiting from his patented inventions.[2] Doc. 70-1 at 14-15 (E-Systems' deemed admissions).

It is the Court's task to fix the amount of damages following the entry of a default judgment. 35 U.S.C. § 284; *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (noting that after entry of a default judgment, a plaintiff's well-pleaded factual allegations are taken as true except as to damages). As previously noted, the consequence of E-Systems' failure to object or answer Plaintiff's requests for admission is that they are deemed admitted. *See* FED. R. CIV. P. 36(a)(3). Moreover, E-Systems' failure to move to withdraw or amend them means that they are binding. *In re Carney*, 258 F.3d 415, 418-19 (5th Cir. 2001) (when a party

---

[2] The $5,250,000 figure is based on E-Systems' admission that it had sold 17,500 units of the infringing product. Doc. 70-1 at 14 (E-Systems' deemed admissions). E-Systems also admitted that it had earned a profit of at least $300 for each infringing item. Doc. 70-1 at 14 (E-Systems' deemed admissions). Multiplying 17,500 units by $300 equals $5,250,000. Doc. 70-1 at 14 (E-Systems' deemed admissions).

fails to timely respond to requests for admission, those requests were deemed admitted and could only be withdrawn or amended by motion as required by Rule 36(b)).

Because E-Systems' admissions are binding, they can be the basis for the entry of a default judgment on the issue of damages.  *See Dukes v. S. Carolina Ins. Co.*, 770 F.2d 545, 549 (5th Cir. 1985) ("[A]ny matter admitted under Rule 36(a) is conclusively established. Once the motion for admission established that [plaintiffs] had misrepresented the age of the tractor, no genuine issue remained as to this fact.").  An established admission cannot be "ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible."  *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).  A district court also cannot amend or withdraw Rule 36 admissions *sua sponte*.  *Id.*  Because E-Systems admitted to the amount of damages it caused Plaintiff by way of its deemed admissions, the undisputed evidence of record dictates that Plaintiff is entitled to a default judgment against E-Systems in the amount of $5,250,000.  35 U.S.C. § 284.

### 2.  Privacy Technology Corp. ("PTC")

Similarly, and by way of PTC's deemed admissions, the undisputed evidence of record establishes that PTC accrued profits from selling the infringing device of at least $500,000 based on a minimum profit of $200 on each of the 2,500 infringing devices it sold, distributed, or sold wholesale between 2008 and 2012.  Doc. 70-1 at 20-21 (PTC's deemed admissions).  PTC's actions prevented Plaintiff from earning those profits, and PTC's sale of the devices was willful, deliberate, and made with the full understanding that it was infringing on Plaintiff's patents.  Doc. 70-1 at 20-21 (PTC's deemed admissions).  But for PTC's actions, Plaintiff would have

been able to sell his patented inventions at the volume necessary to have earned $500,000. Doc. 70-1 at 20 (PTC's deemed admissions).

PTC did not move to withdraw the admissions and, as such, they can be utilized to determine the amount of damages to be awarded upon the entry of default judgment. *Dukes*, 770 F.2d at 549. Because PTC admitted to the amount of damages, the undisputed evidence of record dictates that Plaintiff is entitled to a default judgment against PTC in the amount of $500,000. 35 U.S.C. § 284.

### 3. Covertglass.com, LLC

By way of Covertglass' deemed admissions, it is established that Covertglass accrued profits from selling the infringing device of at least $500,000 based on a minimum profit of $200 for each of the 2,500 infringing products it sold, distributed, or sold wholesale. Doc. 70-1 at 24-25 (Covertglass' deemed admissions). But for Covertglass' actions, Plaintiff would have been able to sell his patented inventions at the volume necessary to have earned $500,000. Doc. 70-1 at 25 (Covertglass' deemed admissions). Covertglass' sale of the devices was willful, deliberate, and made with the full understanding that it was infringing on Plaintiff's patents. Doc. 70-1 at 26 (Covertglass' deemed admissions).

Covertglass did not move to withdraw its admissions, so they can be the basis for the entry of a default judgment on the issue of damages. *Dukes*, 770 F.2d at 549. Because Covertglass admitted to the amount of damages by way of its deemed admissions, the undisputed evidence dictates that Plaintiff is entitled to a default judgment against Covertglass in the amount of $500,000. 35 U.S.C. § 284.

### 4. Willfulness of Infringement

As noted above, the undisputed evidence establishes that each of the Defendants knew that they were infringing on Plaintiff's patents and did so willfully. Doc. 70-1 at 15 (E-Systems' deemed admissions); Doc. 70-1 at 20-21 (PTC's deemed admissions); Doc. 70-1 at 26 (Covertglass' deemed admissions); *Baumstimler v. Rankin*, 677 F.2d 1061, 1072 (5th Cir. 1982) (noting that interrogatories can address the willfulness of infringement sufficient to provide support for an award of damages).

Upon a finding of willfulness, it is within the court's province to treble the damages awarded. *Dowling v. United States*, 473 U.S. 207, 227 n.19 (1985); *cf. Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999) ("[W]hile willful infringement may allow enhanced damages, such finding does not compel the district court to grant them."). Patent litigants may establish their entitlement to enhanced damages based on a preponderance of the evidence standard, and district courts have considerable discretion in meting them out. *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1934 (2016). Nevertheless, such punishment should generally be reserved for egregious cases typified by willful misconduct. *Id.* at 1933 ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages.").

"[P]atent law reflects 'a careful balance between the need to promote innovation' through patent protection, and the importance of facilitating the 'imitation and refinement through imitation' that are 'necessary to invention itself and the very lifeblood of a competitive economy.'" *Id.* at 1935 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989)). That balance can be disrupted if enhanced damages are awarded in garden-variety cases, so they should not be. *Id.* Simply put, enhanced damages are "not to be meted out in a

typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 1932.  The sort of conduct warranting enhanced damages has been variously described in cases as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant or −indeed− characteristic of a pirate." *Id.*

Some of the factors to consider in deciding whether enhanced damages are warranted and the extent of the enhancement include the following: (1) whether the infringer deliberately copied the design of another; (2) whether the infringer investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior during the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  *Read Corp. v. Portec Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc).  "While the *Read* factors remain helpful to the Court's execution of its discretion, an analysis focused on egregious infringement behavior is the touchstone for determining an award of enhanced damages rather than a more rigid, mechanical assessment." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co.*, No. 14-CV-371, --- F.Supp.3d ---, 2016 WL 4480542, at *6  (E.D. Tex. Aug. 24, 2016) (internal quotation omitted).

As noted above, Defendants are deemed to have admitted the willfulness of their actions. Considering the *Read* factors, additional case law, and the admissions, the Court finds that Defendants deliberately copied Plaintiff's patented devices and had no reason to believe that Plaintiff's patents were invalid.  *Read Corp.*, 970 F.2d at 827.  Defendants made no appearance whatsoever in this litigation thereby frustrating Plaintiff's attempts to stop the sale of the

infringing products.  *Id.*  Defendants' size and financial condition are not immediately apparent, but they did engage in misconduct for a significant period of time and took no remedial action that the Court can discern from the record.  *Id.*  Although there is no indication that Defendants ever attempted to conceal their willful misconduct, and it is reasonably likely that they were motivated to harm Plaintiff's potential business opportunity by infringing on the patents in suit. *Id.*; Doc. 70-1 at 14-15 (E-Systems' deemed admissions); Doc. 70-1 at 20-21 (PTC's deemed admissions); Doc. 70-1 at 26 (Covertglass' deemed admissions).  The only difference of significance among Defendants' actions is the fact that E-Systems and Covertglass at least briefly consulted an attorney, made note of the scope of the patents, and followed their attorney's advice.  Doc. 48 at 20-21; Doc. 70-1 at 15.  There is no indication that PTC took similar measures.  In considering the egregiousness of Defendants' behavior, it is difficult to ascertain any particular overt offense.  They simply and completely refused to participate in this lawsuit in any way over the course of several years.  This has resulted in a waste of this Court's valuable resources as well as Plaintiff's and his counsel's time.

In short, the Court finds Defendants' actions to be egregious such that an award of enhanced damages is warranted in this case.  Because E-Systems did take some measures to investigate the scope of the patents in suit, however, the Court does not recommend that the damages against it be trebled.  Similarly, the principal of Covertglass, through his attorney, stated that the company was dissolved in June 2012 and had never sold the device in question. Doc. 48 at 20-21.  A mitigating factor with respect to both PTC's and Covertglass' actions is that they have left the market, Doc. 70 at 13.  As such, the Court does not recommend trebling of damages against those entities either.

Considering the egregiousness of Defendants' actions and inactions in this case and their deemed admissions as to willfulness, the Court recommends that the damages against all Defendants be enhanced by 50%. As such, E-Systems would be liable for damages of $7,875,000, and PTC and Covertglass would each be liable for damages of $750,000. *See, e.g.*, *Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 280-81 (D. Del. 2012) (doubling damages award where competitor was aware of the patent and lacked any defenses, its litigation conduct was somewhat troublesome, the infringer was a subsidiary of a company with over $60 billion in annual sales, the case was not close, the infringer was motivated to harm patent owner, but the duration of the infringement was relatively short, the infringer did not copy the patent in suit, and it was not alleged that the infringer attempted to conceal its conduct); *K-TEC v. Vita-Mix*, 765 F.Supp.2d 1304, 1313-16 (D. Utah 2011) (doubling jury's damages award where the court found that virtually all of the *Read* factors weighed in patent holder's favor and a total award of $22,000,000 would not  cripple the defendant's business, but would ensure that defendant did not profit from the infringing sales); *Parker-Hannifin Corp. v. Wix Filtration Corp.*, Nos. 07-CV-1374 & 07-CV-1375, 2011 WL 976559, at *16-171 (N.D. Ohio Mar. 17, 2011) (awarding a 50% enhancement due to defendant's deliberate copying, failure to fully investigate whether their product infringed the patent and have a good faith belief in invalidity and non-infringement, and engaged in a variety of questionable litigation tactics, but stopped manufacturing and shipping the infringing items immediately after the jury's verdict); *NTP Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, 754-760 (E.D. Va. 2003) (enhancing damages award by 50% where the infringement was clear, the infringer had neither conducted an adequate investigation nor taken sufficient remedial action and the case was not close; however, the infringing device was independently created and the infringer had made no attempt to conceal its

misconduct or harm the plaintiff); *cf. Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 867 (Fed. Cir. 1997) (affirming enhancement of 10% where patent copying was recklessly indifferent as opposed to deliberate, the defendant conducted a "marginally sufficient" investigation of the patents, the defendant engaged in unacceptable litigation behavior, and a large enhancement could jeopardize the defendant's business).

### 5. Request for Permanent Injunction under 35 U.S.C. § 283

The Patent Act permits the court to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  A patent holder seeking a permanent injunction must demonstrate that: (1) it has suffered irreparable injury; (2) remedies such as monetary damages are inadequate to compensate for that injury; (3) considering the balance of hardship between the parties, an equitable remedy is warranted; and (4) the public interest would not be disserved by the issuance of a permanent injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

#### a. Irreparable Injury and Adequacy of Remedies Available at Law

Without additional evidence or a trial on the merits, it cannot be ascertained if, in fact, Defendants' products infringe the patents in suit.  Nevertheless, "[a] consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quotation omitted).  Thus, the allegation of infringement in Plaintiff's operative complaint must be taken as true for purposes of this motion, and the Court may issue a permanent injunction on this basis.  *See Mentor Grp., LLC v. Wu*, No. 09-CV-874, 2010 WL 2363511, at *3 (M.D. Fla. May 19, 2010) ("By failing to answer the Complaint, Defendant is

deemed to have admitted that he deliberately and willfully infringed the Patents," and a permanent injunction was warranted); *Extreme Tool & Eng'g, Inc. v. Bear Cub Enters.*, LLC, No. 08-CV-257, 2009 WL 2948467, at *1 (W.D. Mich. Sept. 3, 2009) (finding infringement based on the default of defendant and issuing a permanent injunction); *Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*, 531 F.Supp.2d 652, 657 (M.D. Pa. 2007) (issuing permanent injunction sought in a motion for default judgment since, on such motions, allegations of the complaint, except those relating to the amount of damages, must be taken as true); *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (granting default judgment where "by defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments, the evidence before the Court established that Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill"); *Whelan v. A. Ward Enters., Inc.*, No. CIV A 01-2874, 2002 WL 1745614, at *2 (E.D. Pa. July 23, 2002) (finding injunctive relief appropriate where defendant failed to answer the complaint and the complaint alleged that defendants' product infringed plaintiff's patent).  As to the remedy, given the procedural posture of this case, it appears that no other remedy will suffice to terminate Defendants' actions.

　　　*b. Balance of Hardships*

　　　There is nothing in the record to indicate that granting the permanent injunction requested by Plaintiff would seriously damage Defendants' businesses, which could continue to sell other, non-infringing products.  *See Judkins v. HT Window Fashions Corp.*, 704 F.Supp.2d 470, 477-78 (W.D. Pa. 2010) (finding balance of hardships factor to favor permanent injunction where there was no evidence that a permanent injunction "would have a serious effect on [defendant's] business").  Indeed, Plaintiff notes that PTC and Covertglass have left the relevant market and are no longer selling the infringing devices.  Doc. 70 at 13.  No record evidence suggests or

demonstrates that Defendants have less resources or would otherwise suffer damages as a result of the injunctions.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one."); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").  On the other hand, as discussed above, Plaintiff would suffer irreparable harm in the absence of a permanent injunction.  This factor, therefore, favors entry of a permanent injunction in this case.

### c. Public Interest

There has been no suggestion that the public will be adversely affected if Defendants are ordered to stop selling their infringing devices.  On the other hand, denying an injunction would harm the public's interest in having patent rights enforced and protected in relation to a device that is not of serious importance to the public's health or safety.  *Judkins*, 704 F.Supp.2d at 478. Moreover, the requested injunctive relief is not overly broad, which favors its issuance.  *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (finding that injunction's narrow scope substantially mitigated the negative effects on the public by excluding users who purchased or licensed the infringing products prior to the injunction's effective date).  For this reason and for the reasons discussed above, this Court should grant Plaintiff a permanent injunction to prevent additional infringement.

### 6.  Attorney's Fees Under 35 U.S.C. § 285

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  This text is patently clear.  It imposes one

13

and only one constraint on district courts' discretion to award attorney's fees in patent litigation, that being that the case must be "exceptional." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014).   The Supreme Court has defined an "exceptional" case as "one that simply stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756.   District courts have the discretion to determine whether a case is "exceptional" on a case by case basis, considering the totality of the circumstances.  *Id.*   A litigating strategy that demonstrates "subjective bad faith" could be so exceptional as to warrant a fee award.  *Id.* at 1757 (overruling *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005), which held that the litigation behavior at issue had to be both "brought in subjective bad faith" and "objectively baseless).

A finding of willful infringement for purposes of enhanced damages does not require a finding that a case is exceptional under section 285.  *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992).   Nevertheless, "the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004).

Under the circumstances presented in this case, the Court finds that an award of attorney's fees is warranted.  The case was in a procedural morass that lasted for over 500 days from November 17, 2012, when Plaintiff filed his original complaint, and April 4, 2014 when he served his second amended complaint on Defendants.  Doc. 34; Doc. 35.  While Plaintiff was plainly at fault for that delay, the remainder of the case (more than 980 days to

date) proceeded against Defendants who had been properly served, yet never appeared even once in the matter.  To wit, they did not respond to Plaintiff's request to the clerk for a default; they did not respond to Plaintiff's motion for a default judgment; they did not respond to Plaintiff's post-judgment discovery on the issue of damages; they did not respond to Plaintiff's motion to compel responses to the discovery; they did not respond to the Court's order directing them to respond to the discovery; they did not respond to Plaintiff's motion requesting a show cause hearing on the discovery issue; they did not respond to the show cause order nor did they appear for the show cause hearing; they did not respond to the undersigned's recommendation that they be held in contempt of court; and, needless to say, they did not respond to this motion for default on the issue of damages.  This laissez-faire attitude consumed more than two-and-a-half years of the Court's, Plaintiff's, and counsel's time.   This Court had to convene two hearings due solely to Defendants' inactivity.  Counsel was forced to unleash a flurry of mail, telephone calls, emails, and even a message posted on a social networking site in an attempt to engage Defendants.  Doc. 50 at 3-4.  And it is difficult to quantify the harm that has befallen Plaintiff due to Defendants' intransigence.  Consequently, the Court finds that this is an "exceptional" case due to the unreasonable manner in which the case was litigated, which is to say not at all.  *Octane Fitness*, 134 S. Ct. at 1756.

In support of his requested fees, Plaintiff provided the affidavit of his counsel, Warren V. Norred, to the Court.  Doc. 70-1 at 2-4.  The affidavit includes documentation supporting an attorney fee lodestar calculation of $19,956.90.  Doc. 70-1 at 2-11.  The Court has evaluated counsel's fees and costs of $66.44 for reasonableness and necessity.  Upon review, the Court finds that the requested compensation is appropriate considering (1) counsel's

affidavit which notes that his hourly rate (of $350) is based on customary charges by others in the field; (2) counsel's experience; (3) counsel's reputation and ability; (4) the nature of the controversy and associated time limits; (5) the results that he obtained; and (6) the nature and length of his relationship with Plaintiff.[3]  Doc. 70-1 at 3.  Thus, the Court should order Defendants, jointly and severally, to pay Plaintiff the attorney's fees and costs incurred.

## IV.    CONCLUSION

Based on the well-pleaded allegations of Plaintiff's complaint, which the court accepts as true, and the record in this action, the Court should **GRANT IN PART** Plaintiff's *Motion for Default Judgment* against Defendants.  Plaintiff should recover (1) economic damages against E-Systems for $7,875,000 and against PTC and Covertglass for $750,000 each; (2) attorney's fees and costs against Defendants jointly and severally in the amount of $20,619.34; and (3) annual interest of 0.84% on the damages dating from the judgment entered on November 4, 2014.  Finally, the Defendants should be permanently enjoined from any further sale of infringing devices.

**SO RECOMMENDED** on December 20, 2016.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[3] Counsel avers that he entered into a hybrid fee agreement in which Plaintiff paid him $2,000 and agreed to pay him 33% of awarded damages before trial and 40% if afterward. Doc. 70-1 at 2.

16

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

     A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE